David OLBROT et al., Defendants,

v.

John J. PETRILLI et al., Plaintiffs.

No. P–CIV–73–32.

United States District Court,
S. D. Illinois, N. D.

July 30, 1973.

None for plaintiffs.

William J. Scott, Atty. Gen. of Ill., for defendants.

## DECISION AND ORDER

ROBERT D. MORGAN, Chief Judge.

This cause of action, filed under the Civil Rights Act, 28 U.S.C. § 1343, was transferred to this court from the United States District Court for the Northern District of Illinois.

The named plaintiffs are inmates at the Illinois State Penitentiary at Pontiac, Illinois. They seek to prosecute the cause on their own behalf and on behalf of "all other inmates of the Pontiac Branch of the Illinois State Penitentiary," seeking equitable relief and monetary damages, pursuant to the provisions of 42 U.S.C. § 1983. The defendants are the Warden of the Pontiac Branch and other employees of the Illinois Department of Corrections.

The cause is now before the court upon the motion of the Attorney General of Illinois to deny leave to proceed with the complaint as a class action, or, alternatively, to dismiss the complaint in its entirety. Plaintiffs were accorded an opportunity to respond to that motion. Their responses have been filed and considered by the court.[1]

This *pro se* complaint, consisting of twenty typewritten pages, can only be characterized as a blanket attack upon the Illinois penal system, in general, and penal administration at the Pontiac Branch of the State Penitentiary, in particular. Only one section thereof could apparently qualify as a proper class action. That same section is, to a degree, factual in statement, and it might be said to have some semblance of substantive merit.

■ That section arises out of an incident at the prison on December 15, 1972. In that context the complaint states that "a fight" took place at the prison, involving "at the most 35 in-

mates." It further states that two inmates were killed in that "fight." It is then alleged that on the same date Warden Petrilli ordered the prison placed on "deadlock," i. e., with all inmates confined to their respective cells on a twenty-four-hours-per-day basis, and with all cells secured by a central locking mechanism. Finally, it is alleged that all inmates were thereby deprived of their rights and privileges and subjected to cruel and unusual punishment, in violation of the Federal Constitution.

A close question of substantive merit is presented by the above circumstances, but the court is convinced that the factual basis does not support a class action for civil rights violation. It appears upon the face of the complaint that Warden Petrilli was faced, on December 15, 1972, with a potential riot situation which had led to the death of two inmates. It was his duty to restore order in the prison, a duty which invoked a wide discretion vested in him as Warden. He chose the temporary expedient of securing the prison by confining the total population within their respective cells. His choice of action may have been harsh and somewhat extended. Other courses of action might have achieved the purpose of quelling the potentially riotous situation by less harsh means, but the choice made cannot be characterized as punitive, much less as cruel and unusual punishment, in the light of the circumstances under which he acted. In the circumstances, the action taken as a temporary expedient cannot be construed as unreasonable, arbitrary, or capricious.

■ That conclusion is supported, generally, by numerous decisions which have held that prison officials are vested with a wide discretion in the areas of internal security and internal discipline.

---

1. On July 23, 1973, while the court was considering the matter and composing this decision, the plaintiffs filed a Motion for Preliminary and Permanent Relief and a Motion for Pre-Trial Hearing.

Both have been considered and, while some new allegations are made therein, it is believed that the discussion herein following is applicable to and dispositive of these motions.

The federal courts should intervene only when action taken by a prison official must be said to be so arbitrary and capricious that it exceeds the bounds of the exercise of a sound discretion. *E. g.*, Henderson v. Pate, 409 F.2d 507, 508 (7 Cir. 1969); Walker v. Pate, 356 F.2d 502, 504 (7 Cir. 1966), cert. denied, 384 U.S. 966, 86 S.Ct. 1598, 16 L.Ed.2d 678; United States ex rel. Knight v. Ragen, 337 F.2d 425, 426 (7 Cir. 1964), cert. denied, 380 U.S. 985, 85 S.Ct. 1355, 14 L. Ed.2d 277; Ford v. Board of Managers of the New Jersey State Prison, 407 F. 2d 937, 940 (3 Cir. 1969). It must be concluded that the action here, taken under exceptional circumstances, presumably was consistent with the necessities of the situation as then conceived by the prison officials. That action appears upon the face of the complaint to be within the permissible realm of the exercise of a sound discretion.[2]

■ Other allegations of the complaint which may be construed as factual or semi-factual are statements that plaintiff Olbrot "has been denied" access to necessary legal research materials, that plaintiff Mueller was disciplined and subjected to a merit staff hearing which allegedly denied to him equal protection of the laws and due process, and that discrimination was practiced against plaintiff Brittain in the areas of work assignments, security classification, and in his transfers between institutions within the penal system. It is obvious that each of those charges relates to alleged violation of the rights of an individual inmate. None affords any basis for a class action.

It would be virtually impossible to chronicle the remaining conclusory charges contained in this voluminous complaint. It charges a lack of qualification under Illinois standards of the Pontiac guard force, coupled with charges of the abuse of power and a conspiracy by the guard force to compel the removal of Warden Petrilli from office. Conclusory allegations of malfeasance and misfeasance are directed against the Warden's office, the administrative guard force, the professional staff, the office staff and the rehabilitative staff at Pontiac, and against the Illinois parole authorities. Finally, in a section entitled "Bad Faith of the State of Illinois," the complaint asserts that the Illinois General Assembly has infringed the rights of plaintiffs, both by acts of commission and by acts of omission, that the Governor of Illinois follows repressive policies and has refused to initiate prison reforms,[3] and that the Illinois Attorney General has deprived plaintiffs of their right to access to the courts.

Two paramount threads of contention do recur repeatedly throughout those voluminous, conclusive charges. The first of these is the contention that the prison authorities have failed and refused to implement Rules and Regulations promulgated by the Illinois Department of Corrections on April 1, 1972. The second is the contention that inmates transferred to Pontiac from the Joliet Branch of the State Penitentiary have been discriminatorily treated in the matters of security classification, institutional assignments and work assignments. No factual basis is stated to support the latter charge.

■ The above summarized areas of complaint clearly attempt to interject this court as the arbiter between the whole prison population and the Govern-

---

2. In his order transferring the cause to this court, Honorable James B. Parsons observed that the complaint "clearly" states a cause of action. That reference was doubtless to this section of the complaint. The court must respectfully disagree with Judge Parsons' appraisal thereof.

3. Such charges are directed at both former Governor Richard B. Ogilvie and incumbent Governor Daniel Walker.

ment of the State of Illinois.[4] The federal courts have no power to control prison administration or to police internal prison operations. They have no power by mandatory injunction to direct prison officials in matters relating to internal security and the care and maintenance of the general prison populations. *E. g.*, Henderson v. Pate, *supra*; Heckart v. Pate, 52 F.R.D. 224, 228–229 (N. D.Ill.1971). Those are matters left to state authority and state discretion, except in those individual cases in which it is shown that such power has been exercised in a manner which is violative of the provisions of the Federal Constitution.

 The broad scope of this complaint requires a reminder that the same Constitution under which the Civil Rights Act was enacted expressly reserves to the several states all sovereign power which is not surrendered to the federal government by the Constitution itself. That reservation of power is tempered by the Fourteenth Amendment, which extends the Bill of Rights as a restraining force against any action by the several states, done and initiated as an exercise of that reserved sovereignty, which is so arbitrary, capricious or dehumanizing that the same must be construed as a deprivation to a citizen of federal rights protected by the Constitution. While it is imperative that the federal courts act diligently to protect those fundamental rights whenever it appears that they are infringed by the action of a state, it is equally imperative that those same courts refrain in other instances from asserting jurisdiction to intervene in the internal processes of state government.

 The court has indulged every presumption in favor of this complaint, but the conclusion is inescapable that the complaint must be dismissed. There is no basis for a class action in the premises and no viable federal cause of action therein stated.

Judgment is entered dismissing the complaint.

---

4. Among the many demands contained in the prayer for relief are:

   a. That the court enjoin Governor Walker from relieving Mr. Petrilli as Warden at Pontiac;

   b. That the court order the State of Illinois to implement the rules and regulations adopted April 1, 1972, by the Illinois Department of Corrections;

   c. That the court order the removal of correctional officers from certification classification;

   d. That the court order the State to reform its prison system; and

   e. That the court retain jurisdiction of the cause because "of the bad faith of the State of Illinois" until all of the demanded orders have been carried out by the State.